ESTATE of Jacqueline E. SHELTON, Deceased, Donald C. Little and Johnnie Mohon, Co-Executors, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 77-1764.

United States Court of Appeals, Tenth Circuit.

Argued March 13, 1979.

Decided Jan. 14, 1980.

Rehearing Denied Feb. 25, 1980.

Donald C. Little and Willard Mellott, Kansas City, Kan. (Arthur M. Mellott, Kansas City, Kan., on brief), for petitioners-appellants.

William S. Estabrook, III, Atty., Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, and Ann Belanger Durney, Attys., Tax Division, Dept. of Justice, Washington, D.C., with him on brief), for respondent-appellee.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal from a judgment of the United States Tax Court, upholding the Commissioner's determination of deficiencies in income taxes payable by the estate of Jacqueline Elkins Shelton, deceased, (taxpayer) for the years 1968, 1969 and 1970. *Estate of Jacqueline E. Shelton*, 68 T.C. 15 (1977).

The issues on appeal are whether the Tax Court erred (1) in concluding that taxpayer, the estate of a deceased Osage Indian who held a certificate of competency, should be taxed on income from headright shares of the Osage tribal mineral trust; and (2) in finding that taxpayer constructively received interest taxable as income in 1970 as part of a refund of taxes paid by the estate of decedent's mother, of which decedent was the sole residuary beneficiary.

I

Upon our review of the record, the authorities, and the briefs and arguments of counsel, we conclude the Tax Court correctly decided the first issue for the reasons expressed in its opinion. *Choteau v. Burnet*, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353 (1931), also involving an Osage Indian holding a certificate of competency, is directly in point and controlling. We see nothing in the subsequent amendments or supplements to the Osage Allotment Act, 34 Stat. 539 (1906), to indicate a change in legislative policy. Neither *Squire v. Capoeman*, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956), stating a policy of liberal construction in favor of Indians, nor *Big Eagle v. United States*, 300 F.2d 765, 156 Ct.Cl. 665 (1962), involving a noncompetent Osage Indian, requires a different result. Also, we see no

validity in the distinction asserted here between the taxation of a live Indian, as in *Choteau*, and taxation of a deceased Indian's estate. Section 4 of the Act of March 2, 1929, 45 Stat. 1478, 1480, specifically declares that upon death of an Osage Indian who had been issued a certificate of competency, moneys and other property accruing to his or her credit are to be paid over to the estate. Income received from a decedent's property is taxable to the estate during administration until the income is distributed, in which case it is taxable to the recipient. I.R.C. §§ 61(a)(15), 102(b), 661(a)(2), 662(a)(2).

## II

■ The relevant facts on the constructive receipt issue are as follows. Mary Jacqueline Elkins, a noncompetent Osage Indian, died in 1932. The Osage Indian Agency (Agency), acting for the Elkins estate, filed a federal estate tax return and paid a tax. In 1970, after a change of position by the government on whether property of restricted Osage Indians was subject to the federal estate tax, the Internal Revenue Service paid the Agency a refund of $150,-241.96, of which $92,578.42 was allocated to interest on the taxes improperly assessed.

In the meantime Jacqueline E. Shelton, daughter of Mary Elkins and sole residuary beneficiary of her estate, had died. In 1967 domiciliary probate proceedings in the Shelton estate were instituted in Wyandotte County, Kansas, and ancillary proceedings were begun in Denver County, Colorado, and Osage County, Oklahoma.

In a letter dated March 17, 1970, the Agency superintendent advised Donald C. Little and Johnnie Mohon, coexecutors of the Jacqueline Shelton estate in all the probate proceedings, that upon receipt "of an additional coexecutors' bond in the amount of $150,000, or in the amount determined by the court, this office will disburse said Federal estate tax refund to you . . . as coexecutors of the Oklahoma probate." Little, who apparently also served as attorney for the estate, protested payment of the refund through the ancillary Oklahoma probate proceeding, asserting that it should be paid through the Kansas domiciliary proceeding. The record shows that the Agency, with the support of the Interior Department, insisted upon paying the refund through the Oklahoma proceeding.

Not until May 1974 did the coexecutors obtain the requisite additional bond. On October 10, 1974, the Agency paid funds held by it arising out of the Elkins estate tax refund to Little and Mohon as taxpayer's Kansas coexecutors, pursuant to an order of the District Court of Osage County, Oklahoma, dated November 27, 1973.

The Commissioner determined that taxpayer's reported fiduciary income for 1970 was deficient by the amount of $92,578.42, which represents the taxable interest element of the refund, on the theory that taxpayer had constructively received that income in 1970. The Commissioner conceded before the Tax Court that twenty percent of the refund allocable to interest was not constructively received by taxpayer in 1970 because the Agency had withheld that amount in order to pay a possible claim of two Washington, D.C., law firms for quantum meruit recovery of legal fees for services in securing the original refund. Their claim was limited to twenty percent of the aggregate refund received by estates of Osage Indians. The amount in dispute in the instant case, therefore, is $74,062.74. The Tax Court held taxpayer failed to meet its burden of showing this income was not constructively received in 1970.

Several arguments are advanced to support taxpayer's position that the Elkins estate tax refund is not includable in Shelton estate's gross income for 1970. First, taxpayer contends that any tax payable in 1970 should have been assessed against the Elkins estate and not the Shelton estate. Under I.R.C. § 641(a)(3) an estate is taxable on income received but not distributed during administration. But if administration of an estate is prolonged for a period longer than necessary for ordinary duties, it is considered closed for tax purposes, and the income, deductions and credits are attributed to the beneficiary succeeding to the

property. Treas.Reg. § 1.641(b)–3. The Tax Court here relied upon Tax Court R. Prac. & P. 142(a) to hold the taxpayer had not met its burden of proof to show the Elkins estate was still in the process of administration. Taxpayer asserts that it met its burden because the record shows the Agency, as trustee, filed for the refund in behalf of the estate and kept open the estate's account, to which the refund was credited.

Whether or not taxpayer's assertion is correct, its argument is unavailing. I.R.C. §§ 661(a)(2) provides that income "properly paid or credited," to a beneficiary during the administration of an estate is deductible by the estate. I.R.C. § 662(a)(2) makes such amounts taxable to the beneficiary. The record here shows that in 1970 the agency tendered distribution to taxpayer. If, as will be treated below, taxpayer constructively received the refund in that year, the interest element would be properly included in its 1970 tax return.[1]

Taxpayer also argues that the interest element was in reality part of the original bequest to decedent and therefore not income. See I.R.C. § 102. While we sympathize with taxpayer's position of having to report the interest income all in a lump sum, the Tax Court correctly decided the question. See I.R.C. §§ 61(a)(4), 102(b)(1); *Easley Trust v. Comm'r*, 228 F.2d 810 (9th Cir. 1955). *Cf. Squire v. Capoeman*, 351 U.S. 1, 9, 76 S.Ct. 611, 100, L.Ed. 883 (1956) (reinvestment income from exempt income subject to tax).

Next, taxpayer argues there were "substantial limitations or restrictions," Treas. Reg. § 1.451–2(a), on taxpayer's right to receive the income in 1970. See *United States v. Steck*, 295 F.2d 682 (10th Cir. 1961). In support of its contention, each of the following is asserted to constitute a substantial restriction: (1) the Agency requirement that the coexecutors post an additional bond; (2) the Agency's insistence

that the fund be paid to the coexecutors in the ancillary Oklahoma estate proceeding; and (3) the Agency's withholding of twenty percent of the fund pending determination of the rights of the Washington, D.C., counsel to fees for services in obtaining the refund.

In our view, none of these were substantial restrictions on taxpayer's right to receive in 1970 the refund less the withheld amount. Oklahoma law requires executors in probate proceedings to post a bond in an amount to be determined by the court, if that court deems a bond necessary. Okla. Stat.Ann. tit. 58, § 171 (West 1965). Thus, the Agency's request that the coexecutors provide a bond "in the amount of $150,000 or in the amount determined by the court" was routine when a sum justifying a bond in that amount was to be turned over to the estate; it was no more than a request that the coexecutors show proof they would abide by the law. No case was cited, or found, holding that requiring a normal fiduciary bond in a probate proceeding is a substantial limitation or restriction justifying postponement of income tax consequences until the fiduciary chooses to file it. The fees for such bonds are standard and modest, and would not be different in amount whenever obtained. This case is quite different from *Patterson v. Comm'r*, 510 F.2d 48 (9th Cir. 1975), upon which taxpayer relies. There taxpayer, a potato grower, was contractually obligated to make a significant outlay for crop insurance as a condition precedent to receipt of payment for a crop if he wanted payment prior to the purchaser's call for delivery. The IRS sought to tax on the constructive receipt theory in the year of harvest. Taxpayer did not purchase insurance until after the end of the year, and his outlay for insurance was less than had he not waited. The Ninth Circuit ruled that the doctrine of constructive receipt should not be stretched to force such monetary choices on a taxpayer.

---

1. Distributions are taxable in the beneficiary's tax year in which the estate's tax year ends. I.R.C. § 662(c). Without proof of adoption of a fiscal year by the Elkins estate, and there is none here, the estate would be presumed to be on a calendar year basis, hence 1970 distributions would be reportable in the Shelton estate's return for that year. See I.R.C. § 441(g).

We hold the Agency's insistence that the fund be paid only through the Oklahoma proceeding was not a substantial restriction whether or not the Tax Court was correct in finding the Acts of April 18, 1912, 37 Stat. 86, and of March 2, 1929, 45 Stat. 1478, vested exclusive probate jurisdiction in the Oklahoma court with respect to amounts held by the Agency for estates of unrestricted Osage Indians. Taxpayer argues it was a substantial restriction because compliance would have caused taxpayer to forego a valuable legal right—receipt of the money through the Kansas proceeding. The record shows the coexecutors thought Kansas payment was important for several reasons. First, they believed such payment would avoid the higher rates of estate taxation imposed by Oklahoma. Mere payment through the Oklahoma proceeding would not trigger tax liability to that state. *See* Okla.Stat.Ann. tit. 68, §§ 802, 818 (West 1966). The funds represented a refund of taxes erroneously paid and interest thereon and thus intangible personal property in the estate of a nonresident, which would seem to be exempt from Oklahoma estate taxes under Okla.Stat.Ann. tit. 68, § 807(A)(1) (West Supp. 1979). Second, they were concerned that the payment would be made to the "wrong persons;" *i. e.*, to the Oklahoma coexecutors rather than to the Kansas coexecutors. But the payment is in reality to the estate, which is the same in both proceedings; even the coexecutors were the same persons in both proceedings—Little and Mohon. Finally, they thought that payment through the Oklahoma proceeding would be inconvenient. But the coexecutors had opened the ancillary proceeding in Oklahoma before this claim arose, apparently anticipating some other need for it; thus, no new activity had to be undertaken to receive the money except for increasing the fiduciary bond if the Oklahoma court should require it. Coexecutor Mohon was a resident of Osage County, Oklahoma. Thus, the claim of inconvenience in this case is at most *de minimus.* In addition, the coexecutors were firmly informed in 1970 that the Agency would not deliver the funds other than to the Oklahoma coexecutors. At this point it was incumbent upon the coexecutors, if they thought that was erroneous, to bring some legal action to secure a different disposition if they wished to avoid constructive receipt.

The contention based upon the Agency's withholding of twenty percent of the refund for payment of a possible claim against the estate is also without merit. The Commissioner stipulated that the ratable portion of the interest element attributable to this withholding was not constructively received in 1970, and the amount in issue was readily determinable. The Tax Court found that eighty percent of the funds were made available in 1970, and that holding is not clearly erroneous.

Affirmed.